## NELSON v. ERNEST REALTY CO., Inc., et al.

### No. 5595.

Court of Appeal of Louisiana. Second Circuit.

March 8, 1938.

Malcolm E. Lefargue and Chandler Furman, both of Shreveport, for appellant.

Irion & Switzer, of Shreveport, for appellees Ernest Realty Co. and Joseph Dambly.

Foster, Hall, Barrett & Smith, of Shreveport, for appellees Capitol Amusement Co. and Saenger-Ehrlich.

TALIAFERRO, Judge.

Plaintiff seeks to recover damages from the owners, their lessee and the sublessee, of the Capitol Theatre Building in the city of Shreveport, La., resulting from physical injuries to her, sustained, as by her alleged, from a fall caused by the heel of her right shoe becoming foul under a metal strip or nosing on the third step of a stairway of the theater balcony. The accident is alleged to have occurred at approximately 7:30 p. m., May 2, 1936, while a picture was being shown.

Plaintiff avers that after entering the theater on a purchased ticket she took a seat on the orchestra or lower floor, and after the lapse of some thirty minutes, it became necessary for her to visit the ladies' rest room on the balcony floor. To reach this room she first had to go up a stairway that leads to the west side of the balcony proper and then ascend via a flight of steps that leads directly to the rest room. The accident is alleged to have occurred after her exit from the rest room, and while she was descending this last-mentioned part of the route to the room.

The gravamen of the petition is reflected from the following articles quoted therefrom:

"14. Your petitioner further shows that said metal or brass strip was placed there by the said defendants to bind and protect the carpet running down said stairway to the edge of said third step, and that the said defendants were negligent and imprudent in placing said brass or metal strip on said third step by improperly and insecurely nailing or tacking said strip to the said third step.

"15. Your petitioner further shows that the negligence and want of skill of said defendants in improperly and insecurely tacking, nailing and fastening said brass or metal strip on the edge of said third step was the direct result of said metal or brass strip to come loose from its fastenings and protrude upward from the edge of said third step on said stairway.

"16. Your petitioner shows that the said defendants were further negligent in that they maintained an improper and careless supervision and inspection over the condition of said stairway and the condition of said loose brass or metal strip

on the said third step; and that, their said negligence, as aforesaid, was further aggravated due to the fact that they allowed this unsafe condition to exist on their premises exposing their guests to dangers of life and limb.

"17. Your petitioner further shows that in falling she caught at the brass rail, which runs alongside said stairway, with her right hand and in so doing her left foot went out from under her causing her to fall on her back and striking the edge of the second step, at which time she lost her grip of the brass rail; after your petitioner had fallen it was necessary for her to extricate her right shoe and foot which was still caught on and by said brass or metal strip on the edge of the said third step, the right heel of her shoe was partly torn off from her shoe by the loose brass or metal strip."

After filing various pleas and exceptions, which appear either to have been overruled or not passed on, defendants answered. Defendants Joseph Dambly and Ernest Realty Company, Inc., owners of the building, admit that they leased same to the Capitol Amusement Company, Inc., and that that company subleased the building to the Saenger-Ehrlich Enterprises, Inc., present operator thereof. They deny the material allegations of fact alleged upon by plaintiff as a cause of action. They further aver that they had nothing whatever to do with the laying of carpet or runners in said building, or the placing of metal nosing across same, nor had they knowledge that such had been done; that they have no control over or interest in the operation of the show business in said building, and that all furniture, equipment, fixtures, etc., placed therein, are the personal property of said lessee or sublessee; and, in conclusion, aver that even had plaintiff suffered injury from the fall, as by her alleged, that responsibility for the results, because of the existing facts, may not be visited upon them.

The lessee and sublessee filed joint answer. They admit the operation of a motion picture theater in said Capitol Building on May 2, 1936, but deny that plaintiff suffered an accident therein on said date or on any other date. All other facts alleged by her as a predicate to her effort to recover damages of these defendants are specially denied by them.

All defendants pleaded, in the alternative, the contributory negligence of plaintiff, based upon facts by them set forth, as a bar to any recovery by her.

Plaintiff's demand was rejected and her suit dismissed. She appealed.

The flight of steps of the Capitol Theatre balcony, on which plaintiff claims to have fallen, consists of several steps, the tread of each being 30 inches long and 28 inches across, while the risers are only 6 inches high. As one emerges from the rest room and starts down the steps, to his left are rows of seats perpendicular to the line of steps. These seats continue to the lower or front side of the balcony. About one foot from the right end of the step on which plaintiff says she fell, there sets in a brass rail, some 30 inches or more high, which extends to the foot of the steps and acts as a protection against falling into an opening above the stairway leading from the lower floor to the front side of the balcony. As clearly appears from the above-given measurements, the step-down from one step to another is slight—only 6 inches—but as the tread of each step is 30 inches long, necessarily both feet are planted on the tread before an attempt is made to descend to the one below. The treads of these steps were covered with rubberized runner. It extended from the base of one riser to and over the top of the next one descending. On top of the runner, and immediately above the riser, a metal strip 1½ inches wide was laid to hold the cloth in place and to reduce wear and tear thereon from constant use by patrons. It was in the strip across the third of these steps that plaintiff contends the heel of her shoe caught, causing her to lose balance and fall. It is well to note here that her height is only 62 inches.

Plaintiff, in describing her fall, said that the metal strip was loose for its entire length of 28 inches, and near the end on her right, it buckled upward three-fourths of an inch, a distance of 1½ inches, and that her shoe's heel (Cuban model) was caught and held by the strip at this point. She admits that she observed that the strip was held in place by three nails driven into the floor.

She further testified that as she lost her balance she grasped the brass rail on her right side with her right hand to check her forward movement, which action, she says, "threw me backward and my left foot went out from under me and my back struck the edge of the second step and

wrenched my right ankle." She also testified that in falling backwards her right foot was caught under her, that it was held foul in the metal nosing, and that she had to unlace it in order to secure its release therefrom. If the foot was under any part of her body, after the fall, necessarily no part of her back could have struck the second step above her. It was 30 inches away. She lay prone on the floor for five minutes, raised her body to a sitting posture, removed the shoe, whose heel had been almost entirely torn from its fastening, and tried to tack it back with the other shoe as a hammer. She made no outcry, but continued on down to her seat on the lower floor and watched the picture for thirty minutes more. Her husband, as previously arranged, called for her there. She notified no one connected with the theater's management of the accident, and only informed her husband after they had left the building. She and he say they walked three or four blocks and had the shoe repaired and then went home. He called the manager that night and told him that plaintiff fell and was injured in the building. Her injuries, she says, forced her to bed, but a physician was not consulted until three days following the accident. This physician found contusions and lacerations of the muscles of the back, mostly localized in the lower end of the back from the coccyx up to the first and third lumbar vertabrae. According to plaintiff's own allegations and testimony, the lower part of her back did not come in contact with the second step. This part of her body would have had to be on or near the strip to cover her right foot, as she claims. She says that the metal nosing incised the canvas across the front side of the heel and also cut into the wood. She wore the shoe for another month and, after purchasing a new pair, threw away this very important piece of evidence. The testimony of the cobbler who repaired the heel was not taken.

Plaintiff's husband testified that he inspected the locus of his wife's fall the morning after it happened. He found the left end of the strip securely in place; but also found that the nail near the right end was "kinder loose" and that the "whole thing had become loose." It was "protruding about a half inch to three quarters of an inch," by which he meant to say that the strip was up above the runner that much. He observed that only three screws had originally held the strip down.

Defendants' manager, immediately after being advised by plaintiff's husband that she had suffered an accident, in company with the assistant manager, inspected the steps leading to the balcony and found none of the metal strips out of perfect condition. None of them needed repair or attention at all. The porter, early the following morning, likewise found them in good condition. Other employees gave like testimony. All agree that the strip was originally fastened down by five screws seven-eighths of an inch long. These penetrated the wood for a considerable distance. The mechanic who put the strips down also inspected the stairway between the date of the alleged accident and trial. He found therein the five screws he put in when the strip was laid. He testified that holes for such screws were drilled by the manufacturer and were six inches apart and that these were amply sufficient to hold it down. None of these witnesses were in the employ of defendant at date of trial. There was no reason whatever, so far as is discernable, for them to color their testimony to any extent. In addition to all this, it is shown that the equipment of this building, the floors, seats, etc., are regularly inspected to discover lack of good condition, defects, etc., and when found promptly attended to.

A former suit by plaintiff against some of the present defendants was dismissed on an exception of no cause of action. She alleged in that petition that she did not know what the object was that caused her to trip and fall, but believed it was a brass strip used to hold the edge of the carpet down, or "some other metal object was either torn or came loose," etc. For lack of definiteness in these allegations her suit was dismissed. No explanation is offered for the contrast in allegations of the two petitions on this score.

It is our belief that plaintiff stumbled on the steps and probably injured the heel of her shoe. Such an accident is not improbable, and as she first alleged, she may not know exactly why she stumbled. We cannot accept the version of the fall as given by her. For her to have fallen upwards, after stumbling forward, seems unthinkable. The laws of gravity must be ignored to believe such.

Questions of fact only are involved. The trial judge watched the progress of the trial closely and decided against plaintiff. We are clearly of the opinion that she failed to make out her case.

Judgment affirmed.